Kevin G. Little, SBN 149818
Michelle L. Tostenrude, SBN 290121
**LAW OFFICE OF KEVIN G. LITTLE**
Post Office Box 8656
Fresno, California  93747
Telephone:  (559) 342-5800
Facsimile:  (559) 242-2400
E-Mail:  kevin@kevinglittle.com

Attorneys for Plaintiff A.M., a minor, by and through
her mother and legal representative, NICOLE MUMMA

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| A.M. , a minor, by and through her parent and legal representative, NICOLE MUMMA,<br><br>                              Plaintiff,<br><br>           v.<br><br>TODD MUMMA; DOES 1-500,<br><br>                              Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>18 U.S.C. § 2255 - Marsha's Law<br>18 U.S.C. § 2252A(f)<br>Cal. Civil Code § 1708.8<br>Cal. Civil Code § 1708.85 |

TO THE HONORABLE COURT:

Plaintiff A.M., a minor suing through her mother and legal representative, Nicole Mumma, hereby makes the following allegations against the defendants' and each of them.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action arising under federal law with supplemental state law claims pursuant to 28 U.S.C. §§ 1331 and 1367.

2.     This Court has venue over this action pursuant to 28 U.S.C. § 1391, as the defendant resides in this juridical district and the underlying events also occurred in this district.

COMPLAINT FOR DAMAGES

**PARTIES**

3.      Plaintiff A.M. is a minor who resides in this judicial district with her mother and legal representative.

4.      Defendant Todd Mumma is an adult resident of this judicial district.

5.      Plaintiff is currently ignorant of the identifies of the defendants sued as DOES 1-500, but she is informed and believes that they are all co-participants in the Defendant's misconduct as alleged herein.  These fictitious defendants will be renamed specifically when and if the Plaintiff learns their actual identities.

**FACTUAL ALLEGATIONS**

6.      On May 8, 2020, Plaintiff learned through law enforcement that Defendant, her own stepfather, had installed hidden video cameras in her bedroom and bathroom and had been filming her while she was dressing, undressing, and using the bathroom.

7.      Additionally, the Defendant was saving and, Plaintiff is informed and believes, sharing and distributing the resultant videos with other persons.  The Defendant had a hidden network server installed at his home and maintained a collection of media storage devices at home and at his work.  Defendant works in the computer technology field and was well capable of disseminating the clandestine videos he made of Plaintiff.

8.      Local and federal officials investigated and interviewed the Defendant, and they also uncovered evidence proving the Defendant's misconduct.  Defendant is currently under prosecution in federal and state court for child pornography and related offenses in which he victimized A.M., his own stepdaughter.  *See* USDC - CAED No. 1:20-cr-00168 JLT SKO, and Fresno Superior Court No. F20904444. In federal court, the Defendant is charged with violating

18 U.S.C. §§ 2251(a) and (e), and 18 U.S.C. § 2252(a)(2).   In state court, the defendant is charged with violating Cal. Penal Code §§ 311.11 and 311.3.

9.      Plaintiff attaches the affidavit submitted to this Court in support of the Criminal Complaint against the Defendant, and she incorporates its contents herein by reference in accordance with Federal Rule of Civil Procedure 10(c).

10.      Defendant was also found with child pornography depicting other minors, seemingly from other parts of the world.  Defendant, under the guise of hunting and business trips, traveled extensively, and Plaintiff is informed and believe that the videos the Defendant made of her without her consent were distributed directly and by computer locally, nationally and internationally.

## CAUSES OF ACTION

First Cause of Action - 18 U.S.C. § 2255 - Marsha's Law

(Against All Defendants)

11.      Plaintiff incorporates the foregoing allegations by reference.

12.      18 U.S.C. § 2255 entitles any victim of enumerated child pornography offenses who has suffered personal injury to sue for the greater of $150,000 or actual damages, as well as an award of costs, attorney's fees, punitive damages and appropriate preliminary and equitable relief.

13.      As a victim of qualifying child pornography offenses who has suffered damages, Plaintiff has standing and the right to seek relief.

Second Cause of Action - 18 U.S.C. § 2252A(f)

(Against All Defendants)

14.      Plaintiff incorporates the foregoing allegations by reference.

15.    18 U.S.C. § 2252A(f) entitles any victim of enumerated child pornography offenses who has suffered personal injury to sue for compensatory and punitive damages, as well as an award of costs, attorney's fees, expert fees, and appropriate preliminary and equitable relief.

16.    As a victim of qualifying child pornography offenses who has suffered damages, Plaintiff has standing and the right to seek relief.

Third Cause of Action - Cal. Civil Code § 1708.8

(Against All Defendants)

17.    Plaintiff incorporates the foregoing allegations by reference.

18.    Cal. Civil Code § 1708.8 makes any person who captures or attempts to capture offensive images of another person engaging in private or personal activity responsible for up to treble damages, punitive damages, payment of a civil fine, disgorgement of any profits from related commercial activity, as well as an award of attorney's fees and expenses.

19.    As a victim of qualifying misconduct who has suffered damages, Plaintiff has standing and the right to seek relief.

Fourth Cause of Action - Cal. Civil Code 1708.85

(Against All Defendants)

20.    Plaintiff incorporates the foregoing allegations by reference.

21.    Cal. Civil Code § 1708.85 makes any person who captures or attempts to capture intimate images of another person responsible for actual damages, punitive damages, as well as an award of attorney's fees and expenses.

22.    As a victim of qualifying misconduct who has suffered damages, Plaintiff has standing and the right to seek relief.

///

///

1

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for legal and equitable relief to the greatest extent permitted by her respective causes of action, as well as any other relief the Court determines to be just and proper.

Dated: May 7, 2022                              LAW OFFICE OF KEVIN G. LITTLE

                                               */s/ Kevin G. Little*
                                               Kevin G. Little, Esq.
                                               Attorneys for Plaintiff A.M., a minor, by and
                                               through her mother and legal representative,
                                               NICOLE MUMMA

EXHIBIT A

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| United States of America<br>v.<br><br>TODD ERIC MUMMA<br><br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **1:20-mj-00102 EPG**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____May 2017 - April 2020_____ in the county of _____Fresno_____ in the
_____Eastern_____ District of _____California_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2251(a) and (e) | Sexual Exploitation of a Minor and Attempt |
| 18 U.S.C. § 2252(a)(2) | Receipt of child pornography |

This criminal complaint is based on these facts:

See attached affidavit of Homeland Security Investigations Special Agent Monique Jacques, incorporated by this reference.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Monique Jacques, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **Sep 18, 2020**

_____
*Judge's signature*

City and state: _____Fresno, CA_____

Hon. Erica P. Grosjean - U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**


**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AGAINST**
**TODD ERIC MUMMA**


I, Monique Jacques, being duly sworn, state as follows:

1. I have been employed as a Special Agent (SA) of
Homeland Security Investigations (HSI) since April 2019,
and I am currently assigned to the Office of the Assistant
Special Agent in Charge, Fresno, California. As a federal
agent, I am authorized to investigate violations of laws of
the United States and to execute warrants issued under the
authority of the United States. Prior to my current field
office, I was stationed at the Immigration and Customs
Enforcement (ICE) Enforcement and Removal Operations (ERO)
Sub Office in Fresno, California since June 2008 and was
an HSI Task Force Officer (TFO) from April 2017 until
April 2019. Prior to that I was stationed at the Customs
and Border Protection (CBP) seaport in Long Beach,
California from January 2008 to June 2008. I have attended
the Federal Law Enforcement Training Center (FLETC) and
completed the Customs and Border Protection program, ICE
ERO Training courses, Criminal Investigator Training
Program (CITP), and HSI Special Agent Training program. As
part of my daily duties as an HSI SA, I investigate

1

criminal violations by persons relating to the unlawful creation, possession, receipt, and distribution of child pornography, as well as violations by persons relating to the online coercion and enticement of minors to engage in illegal sex acts. I have received training in the area of Sexual Exploitation of Minors/Child Exploitation and Child Pornography statutes. During the course of my duties, I have participated in multiple investigations involving unlawful possession, receipt, and distribution of child pornography. I am currently a member of the Central Valley Internet Crimes Against Children (ICAC) task force and I have participated in the service of dozens of state and federal search warrants relating to the internet, including the receipt, distribution, and possession of child pornography.

2.    This affidavit supports a criminal complaint against Todd Eric MUMMA for violating the following federal statutes:

a.)  18 U.S.C. §§ 2251(a) and (e), Sexual Exploitation of a Minor and Attempt; and

b.) 18 U.S.C. § 2252(a)(2), which prohibits certain activities relating to material involving the sexual exploitation of minors including the receipt and/or distribution of child pornography.

3.    The information contained in this affidavit is based upon my personal observations, training and experience, and where noted, information related to me by other law enforcement officers and/or agents.

4.    On May 08, 2020, Internet Crimes Against Children (ICAC) Fresno County Sheriff's Office Detective Scott Schwamb, was advised that private investigator Michael Braa, had contacted the FBI regarding a case on which he was working. Mr. Braa stated that he was hired by a client for an infidelity investigation. During the course of that investigation, Mr. Braa was given an SD card that contained child pornography. Mr. Braa was referred to the Fresno County Sheriff's Office, specifically the (ICAC) Task Force.

5.    Detective Schwamb responded to the business Atlantis Private Investigations located at 7171 N Millbrook Ave Suite 101, Fresno, CA 93720, regarding a subject in possession of child pornography. Upon arrival Detective Schwamb spoke with Investigator Braa.

6.    Braa stated that on April 20, 2020, he was hired by Nicole MUMMA to conduct an infidelity investigation regarding her husband, Todd Eric MUMMA. Nicole told him that her husband had been distant and was not interested in her sexually. Even though she was not having sexual relations with Todd, she noticed his

Viagra pills were still being used. Nicole believed that
her husband, Todd MUMMA, was cheating on her.

7.   Nicole noted other things that made her uneasy
about her husband, specifically that she had overheard a
conversation between him and his nephew where they
talked about using $20,000 to fund their own pornography
website. Nicole confronted Todd about it, but he claimed
he was just joking around.

8.   Nicole also claimed that two years ago
Confidential Victim (CV), who at that time was 13 years
old, was sitting on MUMMA's lap when he reached around
the front of CV's pants and tried to stick his hand
inside CV's waistband. CV told Nicole about it but at
the time they believed it may have just been accident.

9.   Nicole stated that another thing that she
thought was odd was that Todd had a lot of memory cards
used to store electronic data. Mr. Braa told Detective
Schwamb that Nicole had given him several SD and Micro
SD cards and asked him to investigate what might be on
them. Mr. Braa looked at the SD cards, and on one Micro
SD card, Mr. Braa located what he believed to be child
pornography that had been produced of a 15 year-old
victim. Mr. Braa contacted Nicole, and she came to his
office and identified the person in the videos. Nicole
also identified the room in which the videos had been

4

created.

10.  Mr. Braa told Nicole that they needed to
report the images to the police. Mr. Braa was concerned
about MUMMA's actions and told Nicole he was not
comfortable keeping child pornography on his office
computer.

11.  On May 8, 2020, Detective Schwamb met with Mr.
Braa in his office and obtained a statement and
collected evidence.

12.  Detective Schwamb viewed some of the files on
the Micro SD card and observed what appeared to be a
bedroom scene. The view was the same in almost all of
the videos and appeared to the show the same room. In
most of the videos there is a minor child who appears in
various states of dress and undress.

13.  Detective Schwamb spoke with Nicole by
telephone and confirmed the above information. Nicole
told me that she is very concerned for the victim's (CV)
safety. Nicole stated that she knows that no one should
have a camera in a private area which would take nude
images of a child.

14.  Detective Schwamb asked Nicole where she found
the SD and Micro SD card. Nicole stated that the Micro
SD card was inside of a bag that her husband Todd MUMMA
had just used on a trip they had taken to the coast.

Nicole thought that it was an odd place for it to be and that is why she became suspicious of it.

15.   Detective Schwamb collected the SD card (black SanDisk Extreme 16GB SD card) and Micro SD card for evidence. Fresno County Sheriff's Office Detective Kenneth Kalar assisted Detective Schwamb and conducted a forensic preview of the Micro SD card.

16.   During the preview Detective Kalar located forty-two (42) videos that, based on Nicole's statement, depict a minor victim's room. Eight (8) of the video files depict a minor child engaged in sexual conduct. Below is a description of two of the video files for reference.

17.   The file, great1.avi-, is a digital video file of a minor child. The minor is completely naked and appears to be oblivious to the camera. The minor child can be seen in the video exhibiting the minor's genital or pubic area and breasts. There is a date/time stamp on the lower left corner of the video of 2019/11/24 10:15:12.

18.   Nicole identified the minor in the video as someone who was 15 years old at the time.

19.   The file, good7.avi-, is a digital video file that depicts a minor child. The child is wearing black shorts and a black shirt. One of the minor's hands

touches the genital or pubic area of the minor during the video.

20.   Nicole identified the minor in the video as someone who was 15 years old at the time. There is a date time stamp on the left corner of the video 2019/10/23 21:09:41.

21.   Detective Schwamb viewed several video files that, based on the statement of Nicole, appear to depict MUMMA's knowledge of the camera that created the files described above. Below is a description of the videos.

22.   The file, MOVI0436.avi-, is a digital video file that depicts an adult female, identified as a housekeeper, entering a room and taking the covers off of a bed. The woman continues to move things around the room, and then an adult male enters the room and says, "Hola. Could you get into the gate ok?" The male walks briskly over to the camera and removes it from its location. Shortly after the male picks up the camera, the video stops. On the lower left corner of the screen there is a date stamp of 2017/03/12.

23.   Nicole MUMMA told Detective Schwamb that the video depicts a room in her house. Nicole identified the male who entered the room as her husband, Todd MUMMA.

24.   The file, MOVI0025.avi-, is a digital video file that depicts the same view as the other videos from

inside a bedroom used by CV. There is a chair pulled out away from a desk, blocking the view from the closet area. This chair was normally nested under the desk. MUMMA can be seen entering room and pushing the chair into the recessed area of the desk. This cleared the view from the camera to the closet, the area where in several other videos, CV was captured completely nude while dressing and undressing.

25.   It is my belief that Todd MUMMA's purpose for moving the chair was to clear the view between the camera and the closet.

26.   The file, MOVI0438.avi-, is a digital video file that depicts an adult male and female. The female is wearing a robe and the male is partially in view of the camera. The male appears to have a cell phone plugged into a charger. You can hear a male voice in the video who appears to be agitated that he can't find a charging cord.

27.   Nicole stated that the male voice in this video is that of her husband MUMMA. The video appears to have been created in a room other than the room where the videos depicting CV were created (but within the same house).

28.   On May 08, 2020, Detective Schwamb authored a search warrant for the residence on Glen Castle Way,

Fresno, CA, 93730, for any evidence related to the possession and manufacture of child pornography. Since it appeared that this activity might still be ongoing, and the adult offender still had access to the minor child, Detective Schwamb requested night service be authorized for immediate service of the warrant.

29.   On May 09, 2020, Fresno County Superior Court Judge Debra J. Kazanjian issued the search warrant. On May 9, 2020, the search warrant was executed at the residence on N. Glen Castle Way, Fresno, Ca. 93730. FCSO Detective Antunez spoke with Nicole MUMMA and advised her that they had arrived and were intending to serve a search warrant related to the investigation. Nicole had the door unlocked and allowed entry upon the officer's arrival. Officers were told that MUMMA was asleep in a bedroom right off of the living room. Upon entry to the room, officers made audible announcements of their presence and requested that MUMMA wake up. MUMMA awoke and appeared tired and disoriented. MUMMA complied with all commands and the residence was cleared without incident.

30.   FCSO Detective Steve Souphasith and Detective Schwamb spoke with MUMMA in the backyard of his residence. Detective Schwamb advised MUMMA that the interview would be audio recorded. Detective Schwamb

advised MUMMA of his Miranda rights and stated he
understood his rights and would speak with officers.
Below is a summary of the interview:

31.   Detective Schwamb asked MUMMA if he had any
idea why law enforcement would be serving a search
warrant at his residence, and he stated that he did not.
Detective Schwamb explained that he was part of the
Internet Crimes Against Children Task Force. Detective
Schwamb explained that the primary duty was to
investigate child exploitation online. Detective Schwamb
asked MUMMA if that brought anything to mind about why
they were there and he stated, "Not really. I mean I
have looked at pornography before." Detective Schwamb
asked MUMMA if he had ever come across any content that
he thought was underage or illegal, and he stated "No."
Detective Schwamb asked MUMMA if he was sick or injured,
and he stated that he was not. MUMMA said that he had
played golf earlier in the day with his neighbor, so he
was a little sore, but that was it. Detective Schwamb
asked MUMMA if he had anything to drink and MUMMA stated
that he had 3 Tequilas earlier. Detective Schwamb asked
MUMMA what time he began drinking, and he stated around
5 p.m. MUMMA appeared tired but did not appear to be
impaired.

32.   Detective Souphasith asked MUMMA about the

family dynamic and asked who lived at the residence.
MUMMA stated that he lived at the residence with his
wife and with two minor children. Detective Schwamb
asked MUMMA if he had a good relationship with the
minors and he stated he did. Detective Schwamb asked if
the children were good kids or if he had any problems
with them. MUMMA stated they were good kids,
"excellent", and that both minors were honor roll
students. Detective Schwamb asked if the minors were, in
his opinion, honest people and he stated, "I would say
they're honest kids, they have been great, I mean, we
haven't had any problems with them at all."

33.   Detective Schwamb asked about the relationship
between MUMMA and his wife and if they got along. MUMMA
replied, "For the most part" and told me that they
worked together as well. Todd stated that they work in
technology and they are an essential business, so they
have been working despite everything going on. Detective
Souphasith asked whether they were selling the house,
and MUMMA said that they had been looking to downsize
their residence for something more affordable. MUMMA
then became a little exasperated and told officers that
they had him "baffled" as to what was going on. MUMMA
stated that he did not have a problem talking to them,
but he wanted them to "straight shoot" with him.

34.   Detective Schwamb explained to MUMMA that he
was trying to straight shoot with him and then he gave
the following statement: "Let me just say this. I've
got, I have an affinity for girls, and not being, I mean
not girls in my life. I have a beautiful wife. You know,
she's 40 years old, she's been fantastic, we got married
four or five years ago, I love my daughters. You know, I
always wanted a son but after I had my first daughter,
my second daughter, these kids I take like their my own,
you know, like I said I'm helping one learn to drive,
I'm helping the other one with soccer, basketball, I'm
doing the whole thing you know."

35.   Detective Souphasith then asked MUMMA about
his preferences when he looks at pornography. MUMMA
responded that he looks at girls. MUMMA made the
statement that he has a prostate issue and he doesn't
get on the internet very often. Detective Schwamb asked
MUMMA if they had any other males living in the house
and he stated yes. MUMMA claimed that his wife's brother
lived with them for about a year, during the last year.
MUMMA stated that the other male was 20 or 21. Detective
Schwamb then told MUMMA that Detective Schwamb had
recently watched some videos that were disturbing and
that was what brought them to his house. Detective
Schwamb told him that he saw videos of CV in her

bedroom, getting dressed, completely undressed, and
practicing TikTok videos. Detective Schwamb explained to
MUMMA the videos Detective Schwamb saw were not uploaded
to the internet.  Mumma did not offer any explanation of
the videos that Schwamb had described.

36.   Detective Schwamb asked MUMMA how Detective
Schwamb might be able to see inside Mumma's residence
without him knowing, and MUMMA stated surveillance
cameras or nanny cams. Detective Schwamb explained that
hidden cameras often capture video of the person who
placed it when that person goes to move it. Detective
Schwamb asked MUMMA if he now understood why they were
there and he stated, "sure". He then began deflecting
the conversation by saying officers had claimed that
they were there because of uploaded videos. Detective
Schwamb explained to MUMMA that they were not
investigating videos that had been uploaded to the
internet. Detective Schwamb explained that they had
videos depicting a minor victim that had been created
inside of his residence.

37.   After another short conversation about video
cameras picking up the person who placed the camera,
MUMMA indicated that he was realizing that Detective
Schwamb thought MUMMA placed a camera in a minor's
bedroom. MUMMA denied placing a camera in a minor's

room. Detective Schwamb told MUMMA that Detective

Schwamb thought he placed the camera to capture a minor

undressing, and he stated, "I see [CV] undressing all

the time. [CV] walks around the house; I see [CV] all

the time. I see [CV] in bathing suits, [CV] walks out of

the bathroom." Detective Schwamb told MUMMA that none of

those things made it OK for him to put a hidden camera

in a room, pointed directly at the area where someone

gets undressed. MUMMA responded that "[CV] gets dressed

everywhere. Bathrooms, wherever." Detective Schwamb

confronted MUMMA and asked him if he understood what he

did was illegal. MUMMA stated, "No I don't." Detective

Schwamb asked MUMMA if he was saying it was OK to put a

camera in someone's private space and he said, "I don't

think that, uh, I don't think that at all. What I think

is that when I'm thinking somethings is going on and I

want to get to the bottom of it." Detective Schwamb

asked, "Like What?"

    38.   Detective Schwamb explained to MUMMA that they

had already covered that CV is not trouble and doesn't

sneak out of the house. MUMMA responded, "There is not

trouble, its life, its life in general. It's what's

going on, and where I'm going to allow my kids to go and

where they can't go, and who they can be with."

Detective Souphasith asked MUMMA to explain why he put

the camera in CV's bedroom. MUMMA responded, "Well First
of all, I'm not, I'm not saying that I put anything
anywhere and if I did, I can't even remember how long
ago I put something somewhere. so, um." Detective
Schwamb asked MUMMA if he remembered taking the camera
out of the bedroom when the maid was cleaning the room.
MUMMA said, "Well, no, uh, look, I don't even, I can't
even remember where there was a camera, OK, period, so."
Detective Schwamb confronted MUMMA that Detective
Schwamb did not believe his story. Detective Schwamb
explained that officers had video of him manipulating
the camera. MUMMA became exasperated and said, "Ok, so,
let me just sum this up. I guess, I guess. We're not on
the same page and I guess that now that I understand
what you guys are talking about, I mean, the child
pornography thing here is ludicrous."

39.   Detective Schwamb told MUMMA, "It's not
ludicrous." MUMMA responded, "It's not ludicrous to you
guys because you do this all day, but I'm going to tell
you, you know, there's not there's nothing about getting
undressed or not getting undressed. You know my wife
walks around naked, my kids walk around naked, they come
out of the bathroom, this is a daily routine. The last
time I remember putting something in there is because
[CV] was having some friends come over and they were,

15

and, and, like I said generally speaking those are,
they've been really good kids, the older ones getting to
the point where you know they're going out during this
COVID deal and they want to uh, all of a sudden they're
going on 3-hour bike rides, and they're not supposed to
be hanging out with other people, and now there's 6 or 7
other people and I'm just trying to get a grip on what's
going on. And your child pornography thing is way out of
line here."

40.  Detective Schwamb told MUMMA, "First off, what
I need you to understand is when we put a camera in a
place that could potentially capture people in states of
undress." MUMMA then interrupted Detective Schwamb and
said, "Well that would be the bathroom." Detective
Schwamb then explained that a person feels a sense of
privacy in their bedroom and most people walk around
their own bedroom in whatever state of dress or undress
they choose. Detective Schwamb explained that when a
person puts a camera in a bedroom and gets images of a
child doing all kinds of thing, being naked, getting
dressed, making videos, masturbating and the person
takes the videos and names the videos "good" and
"great", those things show the questions were not out of
line.

41.  Detective Schwamb then questioned MUMMA's

assertion that he didn't remember putting a camera
anywhere or that he did it "accidentally". MUMMA again
interrupted Detective Schwamb and said, "I said it
wasn't accidentally." Detective Schwamb told him he knew
that it wasn't done accidentally. Detective Schwamb
began to question the motivations behind putting a
camera in CV's bedroom. MUMMA told Detective Schwamb
that they were completely off base. Detective Schwamb
then asked MUMMA if he was saying someone else put the
camera in the bedroom and asked him to tell them who
would have done it. MUMMA replied, "I'm not saying
someone else did it, I'm saying you're off base."
Detective Schwamb then asked, "That you don't have a
sexual interest in CV?" MUMMA replied, "No, absolutely
not. 100%."

42.   Detective Schwamb then asked MUMMA to explain
why he labeled videos "good" and "great". MUMMA asked
Detective Schwamb, "You saw them?" Detective Schwamb
told him that he did see the videos. MUMMA asked,
"what's good and great about it?" Detective Schwamb
explained that labeling images and videos often gives
insight into what a person is thinking about the subject
matter of the image or video. MUMMA disputed that he had
any sexual interest in CV. Detective Schwamb asked MUMMA
directly how the camera works. MUMMA said, "The camera

was originally set up, uh, I mean, I don't mean to be a
racist here, I mean I just, there was boys that were, I
didn't approve of." Detective Schwamb asked MUMMA to
describe the actual camera, how it works, what it looks
like. MUMMA began rambling about officers leading him
down a road, so Detective Schwamb told him they were
being direct with him, exactly like he asked officers to
be. Detective Schwamb asked him again what kind of
camera it was, and he replied, "It's a charger, it's a
video charger with a camera in it." Detective Schwamb
asked how the camera works, and Mumma became frustrated
and told Detective Schwamb that Detective Schwamb knew
how it worked. Detective Schwamb told him that he did
not know how it worked and that was why Detective
Schwamb was asking him. Mumma said, "You just plug it
into the wall, so, and you don't have an option of where
you get to put it you just put it in the plug."

43. Detective Schwamb asked MUMMA how he retrieves
the videos. MUMMA replied, "You plug it into the
computer." Detective Schwamb asked if it plugs in by USB
and MUMMA said, "yeah." Detective Schwamb asked MUMMA if
the camera has a memory card in it, and he replied, "I
assume so!" Detective Schwamb asked whether, after you
plug the camera into the computer, you can save the
files.  MUMMA said that you "don't save it, you can

review it." MUMMA stated several times that you can't
save the video; you can just view it on the computer.
Detective Schwamb then asked if the device can also
operate as an actual phone charger, and MUMMA confirmed
that it would charge a phone. Detective Schwamb again
questioned MUMMA's assertion that you could not save the
videos and asked how the names could be changed if you
can't remove the videos from the device.  MUMMA stated
you can change file names with a computer.

44.     Detective Schwamb asked again whether videos
could be saved, and MUMMA said, "I don't think you can
save them; I mean you could, but they're not saved,
anywhere." Detective Schwamb explained to MUMMA that the
forensic agents were going through the electronics and
would attempt to locate any evidence. MUMMA again said
that the videos were not saved anywhere. Detective
Schwamb asked when the last time it was that MUMMA had
reviewed the videos on the camera. He began telling
Detective Schwamb that the camera had limited recording
capacity so would record over files when the space limit
was exceeded.

    45.  Detective Schwamb asked MUMMA when he had last
reviewed the camera, and he replied, "This week."
Detective Schwamb asked how videos are recorded, and
MUMMA said it just always records. Detective Schwamb

asked when he reviews the video, is it one long video or
is it shorter videos? MUMMA claimed that he thinks it
records small chunks of video. Detective Schwamb asked
if he knew how long the videos were, and MUMMA thought a
couple minutes long. Detective Schwamb asked where he
got the camera and he told Detective Schwamb, "The
Internet." MUMMA claimed the camera cost about $19.

46.  Detective Schwamb asked MUMMA if he had ever
touched any minor inappropriately or if there had ever
been any accusation of that.  MUMMA told Detective
Schwamb that he has never done that. Detective Schwamb
questioned MUMMA about attempting to put his hand in
CV's pants and MUMMA told Detective Schwamb that it did
not happen. MUMMA claimed that officers would not find
any child pornography videos on his computer, or
evidence of visits to child pornography websites on his
computer.

47.  Detective Souphasith asked MUMMA if he was
seeing anyone other than his wife. MUMMA replied that he
was not and then stated that he has prostate problems
and has trouble getting an erection. MUMMA then also
said that he had looked at pornography most of his adult
life but that the last 3-4 years he had not viewed
pornography as frequently. He claimed that his sex drive
had become diminished.

48. Detective Schwamb asked about the issues he claimed to have had with CV about boys, and MUMMA claimed that he spoke with his wife about them. MUMMA also stated that since he has adult daughters and Nicole had not raised daughters before, she was a little naïve. MUMMA claimed that Nicole lets the minors drive with others who should not be driving other juveniles and such.

49. Detective Schwamb then directly questioned MUMMA about the veracity of some of his statements. MUMMA said, "You're acting like this a daily activity and it's all the time and it's not, and you know, and so, I mean." Detective Schwamb then asked MUMMA, "What's not a daily activity, looking at what the video records?" MUMMA replied, "Yeah, because it's not always there." Detective Schwamb asked, "So how often do you move it in and out of [CV's] room?" MUMMA replied, "When I feel like something might be transpiring or uh." Detective Schwamb asked, "How long have you had that camera, honestly and I get that you won't know the month or day, just guesstimate?" MUMMA responded, "Months." Detective Schwamb asked, "So when do think you started using it?" MUMMA said that he started using it when the boys started coming around. MUMMA said it may have been around August, when CV turned 15.

50. Detective Schwamb spoke with MUMMA about some
of his reluctance to take ownership of what he had done.
Detective Schwamb specifically referenced the "good" and
"great" videos. MUMMA told Detective Schwamb, "Here's
why I'm struggling, here's why I'm struggling, I guess,
because like I said, you know, including my own wife,
who's an adult, and that's a different story and I get
it. This is nothing that I haven't seen before, this is
nothing that doesn't occur in my home, I've been, I have
four [children], this is what they do, I see them all
the time, you know, I swim with them, I see them bathe,
I you know, they come into my, they come into my shower
when I'm showering, you know, we're not a totally modest
family. So, but, when your guys, you know, come at me
with the pornography or the kids' stuff, it, it's eating
me, it's killing me. So, I struggle with my answering
with the way you, I feel entrapped here, you guys are."
Detective Schwamb told MUMMA that he was just asking him
direct questions about the evidence that they have.
MUMMA responded, "But you got to be me for a minute and
I um, I went from, I went from Dad to chester the
molester here."

51. Detective Schwamb then asked MUMMA if he was
going to deny that he changed the filenames to "great"
and "good". MUMMA responded, "I don't know". Detective

Schwamb asked, "You didn't do that, or you don't know?"
MUMMA said, "I guess I did that but I'm saying, it's not
that you're great and good, I don't know I just, there's
no great and good, if you saw 'em, there's no great, no
difference between anything, any other time. And
there's, you know, there's her talking on the phone to
her friends and is it and invasion of privacy? Maybe."
Detective Schwamb explained that minors still have a
right to privacy, and MUMMA said he understands but he
has a right to privacy but no one in the house gives it
to him.

52.   Detective Schwamb then asked MUMMA to explain
what "good" and "great" meant. Why did he change the
names of the videos? MUMMA answered, "They absolutely
mean nothing." MUMMA then stated that the names of the
files were random. MUMMA disputed that there was any
difference between the videos labeled good and great.
MUMMA claims the numbering system is just because you
can't name a file the same name as another file.
Detective Souphasith asked MUMMA if he had ever had any
conversations about starting a pornography website.
MUMMA replied no and he felt like these were just angry
accusations from his angry wife. Detective Schwamb told
MUMMA that he had told Detective Schwamb that he had a
good relationship with his wife and asked why she would

be angry.  MUMMA replied, "So now we have spying on [a minor]. Do you think she's happy?"  The conversation was terminated shortly thereafter.

53.  FSO Sexual Assault Detective Jesse Gloria spoke with CV and obtained her statement. The following is a brief description of CV's statement:

54.  CV stated that MUMMA has been increasingly "creepy" around CV and makes CV feel uncomfortable. CV claimed that MUMMA often touches CV without permission (foot rubs, putting on sunscreen lotion). CV also stated that MUMMA often watches CV while CV is doing things around the house and it makes CV feel uncomfortable. CV even caught MUMMA recording CV with his phone camera while CV was making a dancing video in CV's room. CV said CV has become so uncomfortable that CV has started changing inside of CV's closet so that MUMMA doesn't come into the room and see CV while CV is changing. Unbeknownst to CV, the closet is in direct line of sight to the hidden camera.

55.  During the search of the residence, detectives located what appeared to be a black USB phone charger that is actually a camera. The device was plugged into a wall outlet inside CV's bedroom, on the right side of CV's bed (if you are facing the bed). The camera appeared to be pointing directly at CV's bedroom closet.

This is consistent with the view that was seen in the
videos that were found on the Micro SD card provided by
Nicole Mumma through investigator Braa. Officers were
able to visually identify CV's bedroom as being the room
pictured in the videos that surreptitiously recorded CV.

56.  After the service of the warrant, Nicole
requested that officers meet her at her place of
employment, Select Business Systems, a company that she
and MUMMA co-own. Nicole stated that MUMMA often had
other memory cards (SD, Micro SD, USB devices) at their
work and she was concerned that he may have transferred
images of CV to those, because it is not the normal
practice of employees of the business to use such
devices.

57.  Detective Schwamb went to 7560 N. Del Mar
Avenue(Select Business Systems) and met Nicole. Nicole
turned over twelve (12) memory devices, one which was an
imitation smoke detector, to Detective Schwamb.  She
believed the items could contain images/videos of CV.
Nicole stated that the imitation smoke detector appeared
to have come from her residence. Nicole stated that once
she saw the "smoke detector" in MUMMA's office, she
realized it matched a base that is installed on the wall
in the bathroom used by her children. The bathroom is
separated into two sections. The first section holds a

dual sink and then there is a door into the second
section. The second section has a toilet and a shower.
On the wall above the shower, there is a white plastic
base that appears to be used to hold some sort of device
on the wall. Nicole said she had never noticed it before
but felt like it was an odd place for a smoke detector
or other device.

58.  Upon viewing the "smoke detector" camera
Detective Schwamb observed that the device is in no way
a working smoke detector.  Rather, it is smaller than
all of the other smoke detectors in the house; there is
a Micro SD card slot in the back of the device; there is
a camera lens visible on the front of the device; there
are no wires to connect the device to other smoke
detectors or to electric power; there is not a "test"
button on the device; and the device does not contain a
"speaker" that would provide the audible alarm when
smoke is present. On May 14, 2020, Detective Schwamb
took the imitation smoke detector camera to Nicole's
residence, and it connected to the base perfectly. It
was obvious that the base was meant to hold the hidden
camera onto the wall. From the positioning of the smoke
detector base, it appears that the camera could have
been mounted to give the viewer an unobstructed view of
someone taking a shower or using the toilet. This

bathroom is almost exclusively used by the minor children who live in the residence.

59.   Nicole stated that she found the imitation smoke detector camera inside of MUMMA's desk at work. While officers were at the residence with Nicole on May 14, 2020, Nicole continued to look around her residence for any other items that might contain digital evidence that might have been missed. Nicole located three (3) memory devices and turned them over to Detective Schwamb as evidence.

60.   Since the smoke detector was found at the business, specifically MUMMA's office, and the business has computers and other devices capable of downloading and storing digital images, videos and files, it is believed MUMMA was recording people at his residence and that he then viewed or saved the images and videos while in his office at Select Business Systems.

61.   On May 14, 2020, Detective Schwamb authored a search warrant for the business Select Business Systems at 7560 N. Del Mar Ave, Fresno, CA 93711. Fresno County Superior Court Judge Hilary A. Chittick issued the search warrant.

62.   On May 14, 2020, Members of the Central (ICAC) Task Force served the search warrant at Select Business Systems. Detectives began a search of the building for

evidence related to the warrant and located three (3) portable hard drives in MUMMA's office. On top of the desk were computer monitors for a desktop computer, but Detective Schwamb was unable to locate a computer tower. Detective Schwamb followed the wires from the monitors to the end of the cords, but they were not attached to anything. It is believed that the computer tower for MUMMA's office had been removed prior to the search warrant.

63. Detective Schwamb spoke with Nicole MUMMA and asked her if someone had removed MUMMA's computer from his office. Nicole stated that she had last been inside of his office on Tuesday May 12, 2020, and the computer tower had been present, under MUMMA's desk. Detective Schwamb asked Nicole if the office computers were hooked up to a server backup system where the data from MUMMA's computer might still be saved. Nicole told Detective Schwamb that she would have the company's IT personnel respond to the scene to assist with any technical questions. Once the IT personnel from Select Business Systems arrived, they spoke with Detective Kalar to assist him in attempting to locate any stored data from MUMMA's computer.

64. In an attempt to locate the missing desktop computer tower, Detective Schwamb called MUMMA and gave

him verbal notification of the search warrant at his
business. Detective Schwamb explained to him that
officers were trying to locate the computer tower from
his office.  MUMMA told Detective Schwamb that he had
taken it home so he could "work from home". Detective
Schwamb asked MUMMA if he would be willing to return the
computer tower, and he stated he would have to ask his
attorney. The conversation was terminated with the
understanding that MUMMA or his attorney would contact
Detective Schwamb after their conversation. About 10
minutes after speaking with MUMMA about his computer
tower, Detective Schwamb received a phone call from
MUMMA's attorney, Dan Bacon. Mr. Bacon stated that his
client, Todd MUMMA, had informed him that he (MUMMA) was
in possession of the work computer from his (MUMMA's)
office. Mr. Bacon stated he would collect the computer
tower from MUMMA and bring it to the business and turn
it over to detectives. Mr. Bacon arrived and turned over
a Dell Optiplex 3060 computer tower. The tower was
collected as evidence.

65.  Detective Kenneth Kalar examined the desktop
computer from MUMMA's office that had been turned over
to officers from his attorney Dan Bacon. While examining
the desktop computer's hard drive, Detective Kalar
located 35 images of CV's bedroom, taken with the hidden

camera, in the thumb cache database.

66.   All electronic items were taken to the ICAC
Office Temporary Evidence Storage pending forensic
examination and review. Detective Kalar conducted the
forensic examination of the devices and documented his
findings. Below is a brief summary of what Detective
Kalar found:

67.   Detective Kalar examined an iMAC computer
collected from a common area of the MUMMA residence. On
the computer Detective Kalar located additional videos
that appeared to have been taken with the hidden USB
camera that had been placed in CV's bedroom. Detective
Kalar also located an internet search in the browsing
history for "The Best Motion Detect USB Spy Camera in
the World: 2017 UX-7ScoutOut-Youtube". Detective Kalar
located evidence in the Internet history information
that a user had been viewing pornography websites. The
history indicated several instances where a user viewed
videos of "hidden camera" pornography.

68.   Detective Kalar also located evidence that
indicated a user was viewing "daddy / daughter"
pornography videos. Detective Kalar also examined
MUMMA's cellular phone which had been collected at the
scene during the residential search warrant. The phone
is described as an iPhone X, model number NQAM2, Serial

Number: GHLX14E5JCL8. Detective Kalar unlocked the phone
using the passcode provided by Todd MUMMA during his
Miranda statement.

69.   During his examination of the phone, Detective
Kalar located the Apple ID "tMUMMA@1select1.com".
Detective Kalar also located multiple "screenshot"
images from videos taken with the hidden USB camera. The
digital image files depicted CV in complete or partial
undress and seemed to focus on the anus or genital/pubic
area of CV. The images were located inside of an app
called PrivateCalculatorFree. The purpose of the app is
to secretly and safely store images or videos on the
user's device, behind the guise of a calculator app.
Once the user inputs a code into the calculator, it
unlocks the hidden storage and allows the user access to
their content.

70.   The images located on the phone in the
PrivateCalculatorFree application appeared to have been
cut from video taken with the USB hidden camera. The
videos produced with the USB camera are not all of CV
nude, and many show normal scenes of CV going about CV's
day or of an empty room. MUMMA purposefully cut out
images from the videos that show CV in full or partial
undress and seem to focus on the genital/pubic or anal
area of CV.

71.  Detective Kalar also examined the USB hidden camera and found the following:

72.  Seventy-five (75) movie files were located on the device. All the videos showed CV's bedroom from its location plugged into the outlet under the side table next to CV's bed pointed at CV's closet where CV gets dressed and disrobes.

73.  During Detective Kalar's forensic review he located three images that appear to be child pornography in the unallocated space on MUMMA's iMac computer that was located in his residence.

74.  The first image showed a prepubescent female child with her underwear pulled down exposing her vagina and anus to the camera.  The image shows an adult hand touching the left buttock of the female child.  Based upon the size and lack of development it appears the age of the child is 5-7 years old.

75.  The second image showed a pubescent female child performing oral copulation on an adult male's erect penis in a hotel room.  The title of the photograph is, "Asian Street Meat. com".  The female child is sitting on the bed wearing a pink shirt and pink underwear.  Based upon the size of the female child and the size of her breast development it appears the age of child is between 12 and 14 years old.

76. On the basis of the information contained in this affidavit, it is my belief that there is probable cause to conclude that Todd Eric MUMMA has committed violations of 18 U.S.C. §§ 2251(a)(1) and (e) and 18 U.S.C. § 2252(a)(2).

77. Because this affidavit is written solely for the purpose of establishing probable cause for issuance of a criminal complaint, not every fact related to this investigation has been included.

I declare under penalty of perjury under the laws of the United States that the information above in paragraphs 1-75 is true and correct.

_____
Monique Jacques, Special Agent
Homeland Security Investigations

Sworn to me in accordance with Fed.R.Crim.P. 4.1 by email and
telephone.


Date: September 18, 2020



_____
Honorable Erica P. Grosjean
United States Magistrate Judge