**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| A.M., a minor, by and through her parent and legal representative, Nicole Mumma,<br><br>Plaintiff,<br><br>v.<br><br>TODD MUMMA, et al.,<br><br>Defendants. | Case No. 1:22-cv-00548 JLT SKO<br><br>ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING EX PARTE APPLICATION TO MODIFY THE PRELIMINARY INJUNCTION<br><br>(Docs. 50, 51, 56) |

A.M. alleges in this action that defendant Todd Mumma is liable under federal and state laws that permit the victims of sexual abuse to seek compensation from their abusers. The matter is before the court on her motion for partial summary judgment (Doc. 50) and two related *ex parte* applications (Docs. 51, 56).[1] As explained in this order, the Court **GRANTS** the motion for partial summary judgment and **GRANTS** the *ex parte* application to modify the terms of the preliminary injunction. The Court also **GRANTS** A.M. leave to amend her complaint assert additional or more express equitable claims related to Mumma's assets.

///

---

[1] Unless otherwise noted, citations to filed documents refer to those in this civil action, Case No. 22-cv-00548. Citations to filings in the related criminal case include references to the Criminal case number, 20-cr-00168.

**BACKGROUND**

A federal grand jury returned an indictment against Todd Mumma in 2020, which alleged that he had violated criminal laws prohibiting the sexual exploitation of children and the receipt of material depicting children engaged in sexually explicit conduct. (Case No. 20-cr-168, Doc. 3 (citing 18 U.S.C. §§ 2251, 2252).) The indictment was docketed a few days after a criminal complaint, which included an affidavit from a special agent with Homeland Security Investigations. (Case No. 20-cr-168, Doc. 1 at 2–34.) According to that affidavit, a private investigator had come to police with what seemed to be videos of Mumma's teenage stepdaughter in her bedroom. (*See id.* ¶¶ 4–20.) These videos also appeared to show that Mumma had recorded them using a hidden camera. (*See id.* ¶¶ 21–26.) Officers spoke with Mumma's wife, obtained and executed search warrants of his home, questioned him about what they had found, and discovered further evidence in his workplace. (*See id.* ¶¶ 27–75.) This evidence seemed to confirm the officers' suspicion that Mumma was attempting to and had successfully recorded explicit videos of his stepdaughter in secret, leading to a criminal prosecution. (*See generally id.*)

The case went to trial in this Court in March 2024 on the first charge in the indictment, i.e., for attempted sexual exploitation of a child; the court granted the government's motion to dismiss the second count. (*See* Case No. 20-cr-168, Docs. 131, 136, 138, 139.) The jury returned a guilty verdict. (*See* Case No. 20-cr-168, Doc. 144.) The Court ultimately sentenced Mumma to a prison term of 252 months, followed by a 120-month term of supervised release. (Case No. 20-cr-168, Doc. 183 at 3.) The Court also imposed $55,100 in statutory assessments, restitution of $71,200 to Mumma's minor victim (*id.* at 7), and a forfeiture money judgment of $160,000 (Case No. 20-cr-168, Doc. 182). Mumma's direct appeal was pending at the time of this order. (*See* Case No. 20-cr-168, Docs. 187, 189, 190.)

Meanwhile, in 2022, while the criminal case was still pending, the victim, Plaintiff A.M., filed her civil complaint against him in this case. (*See* Doc. 1.) She seeks relief under 18 U.S.C. §§ 2255(a) and 2252A(f), California Civil Code sections 1708.8 and 1708.85, and for negligence under California common law. (*See id.*; *see also* Doc. 16 (First Amended Complaint).) These laws permit plaintiffs to seek preliminary and permanent equitable relief, compensatory damages,

2

punitive damages, treble damages, fines, and disgorgements of profits, as well as awards of costs and fees, including attorneys' fees.

A few days after she filed her complaint, A.M. applied *ex parte* for a temporary restraining order. (Doc. 5.) She claimed that Mumma had sold his business for $1.5 million, plus an unspecified profit participation. (*See* Doc. 8 at 2.) The buyer had paid a small portion of this sum up front, but most of the sale price was to be paid in $10,000 monthly installments. (*Id.*) A.M. asked the court to order the buyer to direct these payments to the Clerk of Court, so as to prevent them from dissipating, from being concealed, or otherwise being made unavailable to her in the event of a favorable judgment. (*See id.* at 2–3.) The Court issued a more limited temporary restraining order. (*See id.* at 8–9.) It ordered Mumma to "take no steps to make any changes to how the periodic payments . . . are distributed, received, and/or held or utilized." (*Id.* at 8,) He was barred, for example, from taking any steps "to make any changes to how any such payments are made, the account(s) into which the payments are deposited, and/or the use(s) to which the funds are put." (*Id.*) The Court set a hearing and briefing schedule on a preliminary injunction, but the parties stipulated and agreed to retain the terms of the temporary restraining order as a preliminary injunction. (*See* Doc. 36.) They also agreed that if Mumma "decides during the pendency of this action to file a bankruptcy petition," he would "give written notice to plaintiff through her counsel of record" at least thirty days before he filed such a petition. (*See id.*) The Court approved their stipulation and ordered accordingly. (*Id.*)

A little more than a year after Mumma was convicted and sentenced in the criminal case, A.M. filed a motion for partial summary judgment in this action. (Doc. 50.) Her motion is limited to her first claim, under 18 U.S.C. § 2255(a), and to liability only, not damages and other remedies. (*See* Doc. 50-1 at 2.) Damages, she argues, "will have to be considered and determined by a jury at trial." (*Id.*) She also asked the Court to relieve her counsel of his obligation to meet and confer with his opposing counsel in connection with her summary judgment motion, as the pretrial scheduling order requires. (Doc. 56.)

The day after A.M. moved for partial summary judgment, she filed an *ex parte* application to modify the terms of the preliminary injunction. (Doc. 51.) She asks the Court to do two

things: first, prohibit Mumma "from receiving or making any expenditures or distributions from the monthly payments" for the sale of his business "pending final resolution of this action," and second, order Mumma "to provide an accounting of all distributions received and expenditures made from said payments from May 13, 2022 to the present." (*Id.* at 1.)  Mumma opposes both the motion for summary judgment and A.M.'s *ex parte* request to modify the injunction. (Docs. 54, 57.)

First, with respect to summary judgment, he does not oppose the motion based on any genuine disputes of material fact.  Nor does he contend that A.M. is not entitled to partial summary judgment as a matter of law.  Instead, he argues the Court should deny A.M.'s motion because her counsel did not meet and confer with his counsel before filing it. (Doc. 57 at 2.) Although A.M. does not currently seek damages or other relief, Mumma also contends in his opposition that she "has not set forth a case for damages," and he disputes her claims about his assets. (Doc. 57 at 2–3.)

Second, with respect to the *ex parte* application, Mumma argues this court cannot take "any further action" on the preliminary injunction under the Supreme Court's decision in *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999), although he acknowledges A.M. may be entitled to relief under Federal Rule of Civil Procedure 64 and state law. (Doc. 54 at 1–2, 5.)  He devotes most of his arguments, however, to A.M.'s claims about the $10,000 monthly payments and her damages claims. (*See id.* at 3–8.)  His arguments fall into essentially three categories: (1) he contends A.M. has not proven she is entitled to damages greater than approximately $80,000; (2) he contends the $10,000 monthly payments either could be or have already been put to legitimate uses, such as business expenses and attorneys' fees; and (3) he disputes assertions by A.M.'s counsel about what amount remains due to him under the purchase agreement. (*See generally id.*)

A.M. filed replies in further support of both her summary judgment motion and her *ex parte* application. (Docs. 58, 59.)  Mumma then filed a request for judicial notice of several income and expense declarations (Doc. 60.), and a document that purports to be a declaration by his attorney, but which is more accurately described as an unauthorized surreply to the pending *ex*

4

*parte* application (Doc. 60-1).  In this document, Mumma makes three more claims about his assets: (1) that the $10,000 monthly payments have been used to pay mortgage expenses related to a debt on the house occupied by his former spouse, Nicole Mumma, A.M.'s representative in this matter, and to pay corporate expenses, taxes, and attorneys' fees; (2) that other members of Mumma's family have not personally received or used those payments; and (3) that the balance of payments to be made under the purchase agreement is $670,000, plus interest.  (*See id.*)

With the exception of the pending *ex parte* application, the Court took all of these matters under submission without a hearing.  (Doc. 61.)  Having now reviewed the filings related to the pending *ex parte* application, the Court concludes that no hearing is necessary in connection with that application, which is likewise submitted and will be decided on the papers.

**PARTIAL SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment of a "part" of a given claim or defense.  Fed. R. Civ. P. 56(a).  The moving party is entitled to "partial summary judgment" if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*  "Material" facts are those that may affect the outcome of the case.  *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence would permit a reasonable factfinder to "return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

In addition to these standards, this Court issued pretrial scheduling order under Rule 16 in this action, as noted above.  (Doc. 47.)  The scheduling order, like Rule 56, imposes obligations on those who move for summary judgment.  Among other things, they must meet and confer in person or by telephone before filing any such motion.  (*See id.* at 5.)  As the scheduling order explains, the purposes of the pre-filing meeting are to avoid unnecessary motions, to narrow disputes, to explore the possibility of settlement, and to identify undisputed facts.  (*See id.*)  If a party does not meet and confer, it must "set forth a statement of good cause for the failure to meet and confer" in the notice of its motion for summary judgment.  (*Id.* at 5–6.)

A.M.'s counsel did not certify in the notice of her motion for partial summary judgment

5

that the parties had met and conferred.  (*See* Doc. 50.)  Nor did A.M.'s counsel include a statement of good cause for the failure to meet and confer.  Instead, counsel requested to be relieved of his obligation to meet and confer after the fact in a further *ex parte* application, which he filed soon after Munna's counsel made clear in an email that he intended to object to the motion for summary judgment based on a failure to meet and confer.  (Doc. 56 at 9.)

If counsel for both parties had met and conferred effectively and in good faith, they could likely have agreed that certain material facts are undisputed in connection with A.M.'s first claim.  After all, Mumma's opposition identifies no genuine disputes of material fact in connection with his liability on A.M.'s first claim, and he suggests in other filings that an agreement was possible.  In opposition to A.M.'s request to modify the preliminary injunction, for example, he concedes that she "may very well" establish in her summary judgment motion that he is liable in connection with her first claim.  Doc. 54 at 4.

"It is no secret this District has long faced a widely publicized caseload crisis.  When attorneys resolve disputes informally to the extent they can, they allow judges to give their attention only to those disputes remaining and to other cases."  *Mollica v. County of Sacramento*, No. 19-02017, 2022 WL 15053335, at *1 (E.D. Cal. Oct. 26, 2022).  These concerns have led Courts within this district and others to impose sanctions on those who do not meet and confer, even striking or denying some motions outright.  *See, e.g.*, *id.* at *2.  The Court declines to impose such a sanction here, however.  The first Federal Rule of Civil Procedure instructs courts to construe and administer the rules so as "to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Striking or denying A.M.'s motion would run contrary to those purposes, as would an order directing the parties to meet and confer now.  It is clear that there is no genuine dispute of material fact.  The just and efficient resolution here is to reach the merits of the summary judgment motion.  In the future, however, the Court my strike or summarily deny any motion that does not comply with this Court's requirements to meet and confer.

The claim at issue in A.M.'s motion arises under 18 U.S.C. § 2255(a).  That section permits minor victims of violations under 18 U.S.C. § 2251, among several other federal criminal

prohibitions, to "sue in any appropriate United States District Court" and to recover damages for personal injuries they suffered as a result of the violation.  18 U.S.C. § 2255(a).  A.M. has cited evidence and judicially noticeable facts showing she is a victim of a violation of § 2251, that Mumma committed that violation, and that she was a minor at that time, i.e., that she was younger than eighteen.  (*See* Doc. 50-3 at 2–3; 18 U.S.C. § 2256(1).)  Mumma has cited no evidence that could demonstrate otherwise.  A.M. is therefore entitled to partial summary judgment of Mumma's liability under § 2255(a).  She is thus entitled to either $150,000 in liquidated damages or her actual damages, whichever is greater, plus any punitive damages, attorneys' fees, and costs that may be available under § 2255(a), and which remain to be ascertained.  It is not necessary to decide now whether a damages award must be reduced by the value of the restitution paid to A.M. in connection with Mumma's criminal sentence.  (*See, e.g.*, Doc. 54 at 4.)  The Court does not reach that question in this order.

**PRELIMINARY INJUNCTION**

Turning next to A.M.'s *ex parte* application, the Court begins with the requirements of its standing order.  A party who files an *ex parte* application must "include an affidavit indicating a satisfactory explanation" for three things: "(1) the need for the issuance of such an order, (2) the inability of the filer to obtain a stipulation for the issuance of such an order from other counsel or parties in the action, and (3) why such request cannot be noticed on the court's motion calendar as provided by Local Rule 230."  (Doc. 4-1 at 3.)  These requirements ensure litigants do not bypass "the time-tested schedules and safeguards imposed by the Federal Rules of Civil Procedure" without a good reason.  *Cal. Chamber of Com. v. Bonta*, No. 19-02019, 2021 WL 2109639, at *2 (E.D. Cal. May 25, 2021) (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 491 (C.D. Cal. 1995)).  The Court's standing order also helps to avoid unnecessary haste.  "Accelerated briefing and hearing deadlines force unnecessary errors and divert a court's attention from other urgent matters."  *Id.* at *3; *see also In re Intermagnetics Am., Inc.*, 101 B.R. 191, 193 (C.D. Cal. 1989) (warning that *ex parte* applications "should not be used as a way to 'cut in line' ahead of those litigants awaiting determination of their properly noticed and timely filed motions").  The three requirements above also help to ensure that those who request urgent

7

relief are "without fault in creating the crisis that requires *ex parte* relief" or that "the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492.

The declaration attached to A.M.'s *ex parte* application does not show that her attorney attempted to obtain a stipulation from his opposing counsel, as the standing order requires, or even that he discussed the *ex parte* application with his opposing counsel. According to that declaration, her attorney emailed a draft of the *ex parte* application to his opposing counsel and left a phone message with opposing counsel at about 8 a.m. on the morning of January 2, 2026. (*See* Doc. 51 at 9.) He does not say whether his opposing counsel responded to the email or phone message, but it seems he did not wait for a response in any event. According to the notice of electronic filing generated automatically by the Court's CM/ECF system, the *ex parte* application was docketed at 8:59 a.m. on the same day.

Counsel's declaration also lacks any explanation for why the *ex parte* application was not filed sooner, why it could not be heard on the ordinary schedule established by Rule 230, and why and need of urgent action was unavoidable or arose as a result of excusable neglect. Mumma was convicted and sentenced in late 2024—more than a year before the *ex parte* application was filed—and nothing in counsel's declaration explains why A.M. did not seek partial summary judgment or injunctive relief in the intervening year. Although counsel raises a concern that any available funds will be depleted as time goes on, he states expressly that he has "no information regarding how Defendant has utilized" the monthly payments he has received since he sold his business. (Doc. 51 at 9.) The *ex parte* application itself also lacks any citations of evidence substantiating counsel's concerns. In short, plaintiff's counsel hypothesizes that funds will soon be unavailable, but he leaves that hypothesis untested and unsubstantiated.

The Court has not considered the evidence attached to Mumma's unauthorized surreply, which he presented as a request for judicial notice and a declaration by his counsel. (*See* Docs. 60, 60-1.) The arguments in these filings and their timing do show, however, that plaintiff's counsel created confusion and prevented the parties from collecting and presenting relevant evidence by filing a hasty *ex parte* application.

A.M. has not explained why urgent action is necessary and has not complied with this

8

court's standing order. The Court hesitates, however, to reject the *ex parte* application for these reasons, given the possibility that the consequences of a failure to act quickly may truly be irreversible. The Court has therefore reviewed the *ex parte* application. This Court's heavy caseload does not allow it to repeatedly excuse unjustifiably urgent requests for immediate action. So again the Court cautions that future ex parte applications may be stricken or summarily denied if they do not comply with the terms of this Court's standing order.

On the merits, the relevant legal standards are clear. First, the Local Rules permit an "affected party" to "apply to the Court for modification or dissolution" of a preliminary injunction or temporary restraining order. LR 231(e). A district court's authority to modify its own injunctions under this Local Rule is part of its "long-established, broad, and flexible authority" as a "court of equity." *Brown v. Plata*, 563 U.S. 493, 542 (2011) (quoting *N.Y. State Ass'n v. Carey*, 706 F.2d 956, 967 (2d Cir. 1983)). Courts do not normally entertain requests to modify preliminary injunctions, however, unless the moving party shows the modification is necessary to relieve an inequity that arose "after the original order." *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005). The party who seeks to modify a preliminary injunction therefore "bears the burden of establishing that a significant change in facts or law" justifies the proposed modification. *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (per curiam) (quoting *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)). A party cannot rely on arguments that could have been raised before. *Alto v. Black*, 738 F.3d 1111, 1120 (9th Cir. 2013).

Federal district courts have similar inherent authority to "modify" nonfinal orders for any reason they find "sufficient." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (emphasis omitted) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). The Local Rules accordingly authorize applications for reconsideration under this inherent authority. *See* LR 230(j). In practice, however, courts do not reconsider their previous decisions unless "there has been an intervening change of controlling authority, new evidence has surfaced, or the previous disposition was clearly erroneous and would work a manifest injustice." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir. 1995). The

Local Rules expressly require an explanation of "the material facts and circumstances surrounding each motion for which reconsideration is sought," including "what new or different facts or circumstances are claimed to exist which did not exist or were not shown," and "why [those] facts or circumstances were not shown at the time of the prior motion."  LR 230(j)(3)–(4).

A.M.'s *ex parte* application is based on three claims of changed circumstances.  First, she cites Mumma's conviction and his resulting incarceration.  (Doc. 51 at 3–4.)  As noted, his criminal case was pending when the Court issued the temporary restraining order and preliminary injunction.  A.M. argues his intervening conviction shows she is more likely to succeed on the merits of her claim under § 2255(a) than she was when the Court issued the preliminary injunction.  (*Id.*)  Second, A.M. argues there is now a more "intensified" risk that Mumma will wrongfully prevent her from recovering any damages due to her.  (*Id.* at 4–5.)  "An incarcerated person," she argues "has virtually no legitimate need for $10,000 per month" (*id.* at 4.), whereas she is entitled to damages under federal law.  Third, and similarly, A.M. argues a modification is in the public interest because an "incarcerated sex offender" should not be permitted to spend money "while his victim awaits compensation" that Congress has decided she is due.  (*Id.* at 5–6.)

The Court agrees that A.M. is more likely now to prevail on the merits of her claim under § 2255(a) than she was before Mumma was convicted.  The Court also agrees that the likelihood of irreparable harm to A.M. has increased as time has passed.  More monthly payments have been made, and less of the total fund remains to be distributed.  Similarly, with respect to the balance of harm, Mumma's daily living expenses, presumably, nearly eliminated, given his intervening incarceration.  A.M. has not demonstrated, however, that the risk of dissipation or obfuscation is greater now than it was before.  As summarized above, the *ex parte* application does not cite evidence showing funds have been or may soon be diverted, hidden, or frittered away.  Mumma's intervening incarceration does not obviously increase or decrease these risks.  He may very well have legitimate uses for the monthly payments, such as his attorneys' fees.  But his intervening incarceration and the passage of time are sufficiently significant changes to justify a modification to the preliminary injunction.

When a party shows there has been a sufficiently significant change, the court must decide

10

whether that change warrants a revision to the preliminary injunction. *See Sharp*, 233 F.3d at 1170. The Court is "guided" in this decision "by the same criteria that govern the issuance of a preliminary injunction," i.e., (1) whether A.M. has "made a sufficient showing of a likelihood of success on the merits;" (2) whether she "will be irreparably harmed absent interim relief;" (3) "whether the issuance of an injunction will substantially injure other parties;" and (4) "where the public interest lies."

First, A.M. has now actually succeeded on the merits, at least insofar as she has demonstrated Mumma's liability under her first claim; only the amount of her damages, fees, and other relief remain to be ascertained. Second, the Court finds irreparable harm is likely unless stricter controls are placed on the remaining periodic $10,000 payments, given the diminishing available funds. Third, though Mumma has not identified any specific harms that a stricter injunction is likely to impose upon him, it is likely that they will decrease the assets he could draw on for his legitimate expenses, such as his attorneys' fees and any lingering business expenses. Although these harms are nontrivial, they do not outweigh the potential harms to A.M. on the current record. It is not clear, for example, that Mumma has no other assets and no other sources of income to draw on to meet his legitimate needs. Fourth, as for the public interest, "the federal government has expressed a policy favoring the strong and vigorous enforcement of laws protective victims" of sex offenses against children. (Doc. 8 at 7.) A stricter preliminary injunction is more likely to preserve funds for A.M.'s recovery, as Congress has directed in § 2255, even if that means less is ultimately available for legitimate purposes, such as for the compensation of Mumma's counsel. In sum, A.M. has demonstrated the preliminary injunction should be modified.

Beyond these four criteria, the parties disagree whether the Court may even modify the terms of the preliminary injunction as A.M. proposes. Mumma argues this Court does not have authority to take "any further action" under the Supreme Court's decision in *Grupo Mexicano*, 527 U.S. 308. (Doc. 54 at 2.) A.M. argues "pre-judgment relief may be available to prevent the dissipation of assets" when a plaintiff pursues equitable remedies. (Doc. 59 at 1.)

As the Supreme Court described it, the question in *Grupo Mexicano* was "whether, in an

11

action for money damages, a United States District Court has the power to issue a preliminary injunction preventing the defendant from transferring assets in which no lien or equitable interest is claimed." 527 U.S. at 310. In general, the answer was no: "the District Court had no authority to issue a preliminary injunction preventing petitioners from disposing of their assets pending adjudication of respondents' contract claim for money damages." *Id.* at 333. As broad as that holding may seem initially, the Court's opinion makes clear that district courts *do* have power to grant preliminary relief in some circumstances.

As A.M. correctly notes, multiple federal courts of appeal, including the Ninth Circuit, have held that if a plaintiff "asserts a cognizable claim to specific assets" or "seeks a remedy involving those assets," then the district court may "invoke equity to preserve the status quo pending judgment where the legal remedy might prove inadequate and the preliminary relief furthers the court's ability to grant the final relief requested." *In re Focus Media*, 387 F.3d 1077, 1085 (9th Cir. 2004) (quoting *United States v. Oncology Assocs., P.C.*, 198 F.3d 489, 496 (4th Cir. 1999)). Similarly, under Federal Rule of Civil Procedure 18, a plaintiff may simultaneously pursue two claims "even though one of them is contingent on the disposition of the other." Fed. R. Civ. P. 18(b). The rule offers a "particular" example: "a plaintiff may state a claim for money and a claim to set aside a conveyance that is fraudulent as to that plaintiff, without first obtaining a judgment for the money." Fed. R. Civ. P. 18(b). None of the parties or amici raised this Rule in *Grupo Mexicano*, and the Court specifically declined to consider its application. *See* 527 U.S. at 323–24.

The Court's decision in *Grupo Mexicano* was also premised on its holding that the Judiciary Act of 1789 grants district courts "authority to administer in equity suits the principles of the system of judicial remedies which had been devised and was being administered by the English Court of Chancery at the time of the separation of the two countries." 527 U.S. at 318 (quoting *Atlas Life Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 568 (1939)); *see also Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) ("We have held that the statutory grant encompasses only those sorts of equitable remedies 'traditionally accorded by courts of equity' at our country's inception." (quoting *Grupo Mexicano*, 527 U.S. at 319)). The Court acknowledged, however,

that "there are indeed conditions that might call for a wrenching departure from past practice," such that a district court's "flexibility" might reach "a type of relief that has never been available before," though "Congress is in a much better position" than the courts to decide when such a "departure" is warranted.  *Id.* at 322.

These two aspects of the Supreme Court's holding in *Grupo Mexicano* lead this Court to conclude that it has authority to impose stricter injunctive limits on the $10,000 monthly payments.  First, as A.M. notes, she has requested "preliminary and equitable relief" in this case, including a "disgorgement of any profits." (Doc. 16 at 3, 4.)  Disgorgement is an equitable remedy in these circumstances.  *See Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 75 (2020).  In addition, from the beginning of this case, A.M. has put the $10,000 monthly payments in dispute, alleging they are at risk of obfuscation and transfer, and has sought commensurate equitable relief.  (*See generally* Doc. 5.)  The defense has in this way been on notice that even if A.M.'s complaint does not formally plead a fraudulent conveyance or similar equitable claim, she is pursuing equitable remedies related to the disputed $10,000 payments.  *See, e.g.*, *Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case." (quoting *Am. Timber & Trading Co. v. First Nat'l Bank*, 690 F.2d 781, 786 (9th Cir. 1982)).  This case thus includes equitable causes of action and claims for equitable relief that can support a preliminary injunction against the disputed $10,000 payments.

Second, in the statute underlying A.M.'s first claim, immediately after Congress gave victims he right to pursue money for past harms in the form of damages, costs, fees, it specifically granted district courts the additional authority to award "preliminary and equitable relief as the court determines to be appropriate," without noting any limitation on that authority.  18 U.S.C. § 2255(a).  This provision implies strongly that in § 2255, Congress granted district courts authority to issue preliminary relief if doing so is "appropriate" to preserve a plaintiff's practical ability to recover the types of monetary compensation it had just listed.  For that reason, this case appears likely to be one in which Congress has expanded federal court's traditional equitable powers by statute.  The Court therefore concludes that the Supreme Court's decision in *Grupo*

*Mexicano* does not bar it from imposing stricter injunctive limits on the $10,000 payments.

As noted above, A.M. requests two types of interim equitable relief.  First, she asks the Court to prohibit Mumma "from receiving, expending, or authorizing any distributions from the monthly payments due under the Asset Purchase Agreement with Copier Headquarters, Inc., dba GoodSuite, pending final resolution of this action."  (Doc. 51-1 at 1.)  The Court finds this additional restriction is appropriate given her high likelihood of success, her proven entitlement to damages and other compensation under 18U.S.C. § 2255(a), the likely irreparable harms in the absence of any restriction, the lesser harms to Mumma, and the public interest.  A.M. asks the Court to order the payor to deposit the $10,000 payments directly with the Clerk of Court.  (*Id.* at 2.)  The Court declines to impose this requirement.  A.M. has not demonstrated that it is necessary to prevent the funds from dissipating or being expended unjustly.  Second, A.M. requests "a complete accounting to [her] counsel" detailing, among other things, all payments received, all expenditures made, and the current balance of any related accounts.  (*See* Doc. 51-1 at 2.)  A.M. did not include an equitable claim for an accounting in her complaint, and the parties have not discussed the legal standards that would apply to an accounting claim, nor whether an accounting is necessary to prevent funds from being expended unjustly while this action is pending.  The Court thus denies her request for an accounting but grants A.M. leave to amend her complaint to assert additional and more express equitable claims related to Defendant's assets.

## CONCLUSION

For the reasons above, the Court ORDERS as follows:

1.      The motion for partial summary judgment (Doc. 50) is **GRANTED**.  Plaintiff has established Defendant's liability under 18 U.S.C. § 2255(a), with an appropriate award of damages, fees, costs, and other remedies to be determined in due course.

2.      The *ex parte* application to be relieved of the obligation to meet and confer (Doc. 56) is **DENIED AS MOOT**.

3.      The ex parte application to modify the preliminary injunction (Doc. 51) is **GRANTED IN PART**.  The temporary restraining order previously entered by this Court on May 13, 2022 (Doc. 8), as extended by stipulation on September 30, 2022 (Doc. 36), is hereby

14

**MODIFIED** as follows:  Defendant Todd Mumma is hereby **PROHIBITED** from receiving, expending, or authorizing any distributions from the monthly payments due under the Asset Purchase Agreement with Copier Headquarters, Inc., dba GoodSuite, pending final resolution of this action and a further order of this Court[2].  The injunction imposed in this order will remain in effect until the final resolution of this action or a further order of this Court.  Defendant may apply to the Court for a modification of this order or for dissolution of the preliminary injunction in compliance with the Federal Rules of Civil Procedure, the Local Rules of this District, and this Court's standing order.

4.    The Second Amended Complaint permitted by this order must be filed, if at all, **WITHIN THIRTY DAYS**.

IT IS SO ORDERED.

Dated:   **February 17, 2026**

_____
UNITED STATES DISTRICT JUDGE

---

[2] In effect, GoodSuite must retain the remaining payments until further order of the Court.

15